Ryan E. Hatch
ryan@hatchlaw.com
California Bar No. 235577
**HATCH LAW, PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 279-5079
Fax: (310) 693-5328

Alan D. Sege
alan@alansege.com
California Bar No. 177350
Edmund DeFrank
ed@alansege.com
California Bar No. 168479
**ALAN SEGE, ESQ. PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 957-3301
Fax: (310) 693-5328

*Attorneys for Plaintiff Actian Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ACTIAN CORPORATION,<br><br>        Plaintiff,<br>   v.<br><br>LEICA GEOSYSTEMS, INC.<br><br>        Defendant | **Case No.**<br><br>**COMPLAINT FOR:**<br>**1. Breach of Contract;**<br>**2. Copyright Infringement;**<br>**3. Contributory Copyright Infringement;**<br>**4. Vicarious Copyright Infringement; and**<br>**5. Unfair Competition**<br>**6. Negligence**<br><br>**DEMAND FOR JURY TRIAL** |

1
COMPLAINT

Plaintiff Actian Corporation ("Plaintiff" or "Actian") hereby files this Original Complaint and asserts, through its attorneys, claims against defendant Leica Geosystems, Inc. ("Leica" or "Defendant").

## INTRODUCTION

1.      Actian develops and licenses data management, integration, and analytics technologies used by thousands of customers worldwide. One of Actian's proprietary technologies is the FastObjects database management system, formerly known as POET ("FastObjects" or the "Software"). The Software is a high-performance database used in business applications requiring reliable data persistence and transactional integrity. Actian owns all right, title, and interest in the Software. Versions of the Software are distributed and licensed according to Actian's end-user license terms and other written license agreements governing installation, use, copying, and distribution.

2.      Since on or around August 1998, Leica has used, reproduced, and distributed copies of the Software as an embedded component in its own software products, including but not limited to the "Cyclone" 3D laser scanners (collectively, the "OEM Products"). Although Leica's license with Actian expired on September 30, 2025, Leica brazenly continues in unauthorized use, reproduction, and distribution of the Software until this day.

3.      Leica's most recent use of the Software was governed by a March 31, 2024 settlement agreement (the "Settlement Agreement") between Leica and Actian, attached as Exhibit 1 hereto. The Settlement Agreement incorporated a subscription order for the Software (the "Subscription Order"), which is Exhibit B to the Settlement Agreement.  The Subscription Order incorporates by reference Actian's General Terms and Conditions (the "T&Cs"), attached as Exhibit 2 hereto, and Actian's license terms (the "License Terms") attached as Exhibit 3

hereto. The Settlement Agreement, the Subscription Order, the T&Cs and the License Terms are referred to herein collectively as the "Agreements."

4.     The Settlement Agreement and Subscription Order granted Leica only a limited, time-bound license to use or distribute copies of Versions 12 and 14 of the Software, subject to strict compliance and cessation obligations between the date of the Settlement Agreement and September 30, 2025, and to sublicense only those time-bound limited rights to only those licensed copies of the Software distributors and users of the OEM Products. The Settlement Agreement replaced all prior rights and did not grant Leica itself, its customers or its distributors any rights with respect to the Software after September 30, 2025.

5.     Actian recently discovered that during the term of the Subscription Order, Leica continued to distribute its OEM Products under perpetual licenses without informing its customers or distributors that all rights to use the licensed copies of the Software would expire on September 30, 2025.  Even after the expiration of its license from Actian under the Subscription Order, Leica continues, to the present day, to use, reproduce and distribute copies of the Software to its customers, permitting them to continue using them for an unlimited period of time, all in violation of the Subscription Order and in violation of Actian's copyrights in the Software. Furthermore, Leica refused to comply with the audit obligations outlined in the T&Cs or voluntarily share information with Actian, which would have allowed Actian to verify Leica's compliance and confirm that Leica had ceased all use and distribution of previously licensed copies of the Software.

## **PARTIES**

6.     Plaintiff Actian Corporation is a Delaware corporation with its principal place of business at 2600 Great America Way, Suite 101, Santa Clara, CA 95054.

7.     Defendant Leica Geosystems, Inc. is a corporation organized under

the laws of the State of Delaware with its principal place of business located at 10850 Westmoor Drive, Westminster, Colorado 80021. Leica's Agent of Service in California is Cogency Global Inc., located at 1325 J Street, Suite 1550, Sacramento, CA 95814.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because Actian asserts claims arising under the Copyright Act, 17 U.S.C. §§ 101 et seq. Actian's copyright claims concern the unauthorized reproduction, distribution, and execution of copyrighted computer software. These claims present substantial questions of federal law. Jurisdiction over Actian's copyright claims is exclusively in federal court. This Court has authority to grant all relief requested.

9.     This Court has supplemental jurisdiction over Actian's state-law claims pursuant to 28 U.S.C. § 1367. Actian's breach of contract, unfair competition, and negligence claims arise from the same nucleus of operative facts as its federal copyright claims. Those facts include Leica's refusal to submit to audits, distribution of copies of the Software on a perpetual basis that does not expire on September 30, 2025, continued post-expiration use of the Software, and ongoing distribution of products incorporating copies of the Software past September 30, 2025. Exercising supplemental jurisdiction promotes judicial economy, convenience, and fairness. No exceptional circumstances warrant declining jurisdiction.

10.     Venue is proper in this Court, and this Court also has personal and subject-matter jurisdiction over Leica and this case because Leica has agreed that venue is proper and consented to this Court's exclusive jurisdiction over this dispute. In Section 6 of the Settlement Agreement, Leica agreed that "The Parties agree that any claim for breach of, action to enforce, or otherwise related to the

transactions contemplated by, this Agreement shall be exclusively filed in and adjudicated by the state and federal courts located in the Northern District of California, and that any and all objections to the jurisdiction and venue of such courts over actions in connection with this Agreement are hereby expressly waived." Similarly, Section 8.3 of the T&Cs provides that "[a]ll disputes arising out of or relating to this Agreement shall be brought exclusively in the federal courts located in the Northern District of California or the state courts located in Santa Clara County, California, and the parties agree to submit to the exclusive jurisdiction of such courts."

11.    This Court also has personal jurisdiction over Leica because it purposefully availed itself of the privilege of conducting business in California and in this District. For example, Leica maintains offices and conducts substantial business operations in California and in this District, including at least at 5000 Executive Parkway, Suite 500, San Ramon, CA 94583 (its corporate location in California), at 1447 Rollins Road, Burlingame, CA 94010 (a Leica solutions/support center), and at 201 Paularino Avenue, Costa Mesa, CA 92626. Leica distributed software products incorporating the Software to customers in California and directed licensing, compliance, and audit-related communications to Actian's California-based personnel. Leica's conduct caused harm to Actian in California. Accordingly, the exercise of personal jurisdiction is consistent with due process.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Actian's claims occurred within this District. Leica's infringing software products were distributed, installed, and used within this District. Leica's refusal to submit to audits and continued post-expiration conduct had effects within this District. Actian suffered injury within this District. Venue is therefore proper.

13.    Actian incorporates by reference all allegations of this Complaint for purposes of establishing jurisdiction and venue.

## FACTUAL BACKGROUND

### Actian and the FastObjects Software

14.    The Software is protected by numerous United States Copyright Registrations, including but not limited to Copyright Registration Nos. TXu002344685 (FastObjects version 8), TX0009328613 (FastObjects version 8), TX0009232880 (FastObjects version 9.5), TX0009322004 (FastObjects 10), TX0009322008 (FastObjects 11), TX0009327286 (FastObjects 12), TX0009366869 (FastObjects 14), TXu002341608 (POET version 5.1), TX0009355977 (POET version 4.0.0.0.25), TX0009328206 (POET version 5.1), TX 9-367-924 (POET Developer Network 1997, No.2), TX0009356207 (POET version 5.0.3.88) (collectively, the "Copyrights"). Actian licenses the Software to end-users pursuant to agreements, including but not limited to the Agreements at issue here, which strictly govern the scope of authorized use.

15.    Actian is the exclusive owner of all right, title, and interest in the Software, including all related source code, object code, binaries, runtime components, updates, enhancements, and documentation.

16.    The Software is an embedded, high-performance database that serves as a foundational backend component within complex software applications. Products that incorporate the Software rely on it for core functionality, including persistent data storage, transactional integrity, and object lifecycle management. Its inclusion materially enhances the value and functionality of the products in which it is embedded.

17.    All rights in the Software are licensed only pursuant to express written agreements that strictly limit the scope of use, duration, and distribution. Any use outside those agreements is unauthorized.

COMPLAINT

**The Settlement Agreement and Subscription Order**

18.     Prior to March 31, 2024, Leica and certain of its predecessors were permitted to use the Software pursuant to limited, written original equipment manufacturer ("OEM") and end-user license agreements (collectively, the "Prior Agreements"). The Prior Agreements expressly preserved Actian's exclusive ownership of the Software and restricted the manner in which the Software could be embedded, distributed, and commercialized. Leica did not acquire any ownership interest, perpetual license, or implied rights in the Software under the Prior Agreements. Leica's rights under the Prior Agreements were conditional and subject to compliance, audit, and scope-of-use limitations. Any use of the Software outside the rights granted by the Prior Agreements was unauthorized.

19.     During the term of those Prior Agreements, Actian identified multiple compliance concerns relating to Leica's use of the Software. Those concerns included a lack of transparency into downstream deployments, uncertainty regarding end-user access and distribution, and potential scope-of-use violations. Actian raised these issues with Leica and sought to enforce its contractual rights, including audit and compliance mechanisms. The parties' dispute over Leica's use of the Software ultimately led to negotiations to resolve past conduct and reset the parties' relationship on defined terms. Those negotiations culminated in the Settlement Agreement.

20.     The Settlement Agreement terminated and superseded all the main terms of the Prior Agreements, with the exception of certain survival terms, and replaced the main terms with a subscription model under which Leica's authorization to use the Software would cease on September 30, 2025. Actian relied on those representations in agreeing to resolve prior disputes and

7
COMPLAINT

to release claims based on Leica's past conduct. The settlement structure required Leica to cease all use of the Software upon the expiration date of the subscription term. That assumption was material to Actian's decision to enter into the Settlement Agreement.

21.    As part of the Settlement Agreement, Leica was granted a limited right to distribute subscription – time-bound – licenses to use the Software within its OEM Applications, memorialized in the Subscription Order and the written Actian terms it incorporates, from March 31, 2024 until September 30, 2025.  The Subscription Order included strict compliance and audit obligations, replaced the Prior Agreements, and did not grant Leica any perpetual, residual, or continuing rights beyond the  term to reproduce or distribute copies of the Software under any circumstances.

22.    In the Subscription Order, the parties expressly and explicitly agreed that Actian conveyed *only* the limited-term right to distribute time-limited subscription licenses to copies of the Software. Every item and SKU in that Subscription Order is labelled "subscription," as opposed to "perpetual," and every unit is described with the license "End Date" of September 30, 2025.

23.    Additionally, the limited term of the subscription license was explicitly referenced in Section 3 of the Subscription Order, which grants a license only "for the term starting on March 31, 2024 until September 30, 2025."

24.    If the clear labelling in the Subscription Order left any doubt, which it does not, the Settlement Agreement further clarifies the non-perpetual nature of Leica's go-forward license to the Software copies through a specifically written survival clause with respect to the perpetually-licensed copies of Software that Leica had previously distributed to its customers *prior*

*to the Settlement Agreement and Subscription Order*, stating "each End-User's right to use the copies of OEM Applications already distributed by Leica… will survive" expiration. That clause preserves only end-user rights with respect to copies distributed prior to termination of the OEM Agreement under the Settlement Agreement, and makes clear that from March 31, 2024 forward, Leica had no right to deploy or use any further copies of the Software except on a subscription basis, expiring September 30, 2025. Any post-expiration distribution, download, or enablement by Leica therefore violates the Subscription Order and falls outside the scope of the licenses conveyed therein.

25.    Moreover, Section 1 of the Subscription Order expressly incorporated by reference Actian's public webpage that contained additional terms and conditions for use of the Software (https://communities.actian.com/s/supportservices/policy). These additional terms and conditions included the T&Cs and the License Terms for the subscription in the Subscription Order.

26.    By definition, a "subscription" is something limited to a specific term and expires after the term ends.  Indeed, a "subscription" is described in the License Terms as follows: "An active subscription includes the use of the licensed product and Enterprise Support during the term," and further that a "subscription that is not renewed at the end of the term will be considered expired, and the customer will discontinue all use of the software and Support Services." Neither the Settlement Agreement nor the Subscription Order allowed for residual, implied, or continuing rights to remain in effect beyond the stated term ending on September 30, 2025.

27.    Leica expressly agreed that its post-settlement rights were limited to the terms of the Agreements. As such, the Agreements defined the scope of

Leica's lawful use of the Software going forward.

## Representations Made by Leica

28.    During negotiations leading up to execution of the Settlement Agreement, Leica represented, expressly and by necessary implication, that its use of the Software was compatible with Actian's proposed subscription model, which would expire absent renewal. Leica would have known at the time of settlement that the Software was embedded within Leica's software architecture in a manner inconsistent with a time-limited "subscription" license.

29.    Some of Leica's software products that embedded the Software appear to have been designed and distributed as perpetual products that automatically install and execute the Software as a persistent backend component. Leica's customers used the Software as an integral, continuously executing component of Leica's perpetual software offerings and Leica did not control the use of the Software. Actian reasonably understood that any new customer use would require renewal of the Subscription Order, if any of Leica's customers were to be permitted to download or receive, use, install or execute the Software through Leica's products.

30.    Actian did not agree to grant Leica a de facto perpetual license for the Software through embedded use within Leica's software products. Nor did Actian agree to resolve prior disputes based on a settlement framework that could not be practically enforced upon expiration. Had Actian known that Leica would not control or terminate its customers' use of the Software and instead would allow its software products incorporating the Software to remain in use after expiration, and especially that Leica would continue its out-of-scope distribution of perpetual copies of the Software after expiration of the Agreements, Actian would not have entered into the Settlement Agreement or

10

COMPLAINT

the Subscription Order on the agreed pricing or terms.

**Contractual Audit Rights Under the Agreements**

31.     The T&Cs included an audit provision in Section 8.6 that states "To help manage Your use of the Products or Support Services and Your compliance with this Agreement, You agree to provide Actian with a written report certifying Your deployment of the Products upon reasonable prior written notice from Us." The T&Cs also state that Actian "may instigate the Formal Audit process…."

32.     These audit rights allow Actian to verify compliance by Leica and to confirm cessation of use upon expiration of the subscription. Leica agreed to cooperate with such audits and to provide access to relevant records when it entered into the Agreements.  Alternatively, Leica could have simply shared similar information with Actian voluntarily.  Because the Software operates as an embedded software, Actian could not independently observe Leica's internal deployments or downstream distributions, making visibility into the uses important.

33.     Beginning in advance of the September 30, 2025 expiration date of the subscription term, Actian requested an audit of Leica's usage of the Software to confirm compliance and ensure an orderly wind-down. After Leica failed to cooperate at the business level, Actian's in-house counsel formally invoked Actian's audit rights with Leica's in-house legal department. Leica categorically refused to permit an audit, without disputing the validity of the audit provision or proposing any alternative process.

34.     Actian, through outside counsel, reiterated the audit demand and escalated the issue to Leica's parent company, Hexagon AB ("Hexagon"). Despite notice and an opportunity to intervene, neither Leica nor Hexagon took steps to ensure compliance. Following expiration of the subscription term

on September 30, 2025, Actian again requested an audit to confirm that all use of the Software had ceased, but Leica did not respond or provide any certifications, records, or assurances.  Indeed, publicly available information indicates that Leica did not cease its use or distribution of copies of the Software after the subscription term expired on September 30, 2025.

### Violation of the Agreements

35.     Leica has wrongfully prevented Actian from discovering the full scope of Leica's customers' use of the Software with Leica's software offerings. Leica's refusal to comply with Actian's audit request was not merely a contractual breach, but a continuation of the same pattern of concealment that led to the prior dispute.

36.     Leica has made its software products incorporating the Software publicly available for download through Leica-controlled and Leica-affiliated websites continuously since at least 2023, including before, during, and after the March 31, 2024 settlement and the September 30, 2025 expiration of Leica's subscription rights.

37.     Despite agreeing to a time-limited license to distribute only time-limited subscription copies, Leica never altered its distribution practices or OEM Products to reflect the expiration of rights to the Software. From the outset of the Settlement Agreement on March 31, 2024, through its expiration on September 30, 2025, and continuing until today, Leica has continued to provide publicly-accessible downloads for its OEM Products that include the Software as though it remained entitled to distribute perpetual, non-time-limited copies with no September 30, 2025 expiration date. Leica did not disable downloads, restrict access, implement license-based controls, implement its own OEM Product license terms, or do anything at all to effectuate the cessation of its rights and its customers rights to use copies of

the Software after the September 30, 2025 expiration date.

38.     By maintaining unchanged distribution, and by permitting customers to download and install OEM Products incorporating the Software after the September 30, 2025 expiration, Leica until this day behaves as though it continues to be entitled to distribute copies of the Software forever, with no expiration date. Every deployment and distribution by Leica from March 31, 2024 on this basis therefore constitutes an unauthorized reproduction, distribution, and use.

39.     By continuing to offer these products for download and use, Leica affirmatively enables and facilitates the ongoing unauthorized use of the Software by third parties. Leica's conduct is not passive or incidental, but the direct result of its decision to maintain public availability of its software products incorporating the Software after its rights to do so have expired.

40.     Leica's software architecture automatically installs and executes the Software as part of normal operation, because Leica's software architecture is designed so that the Software is embedded within Leica's products. The Software executes as part of normal operation, leaving customers and end-users with no meaningful ability to avoid copying or execution of the Software. End-users had no practical ability to distinguish between pre-expiration and post-expiration distributions or to avoid copying or executing the Software once obtained. Leica's continued distribution therefore caused ongoing unauthorized use by customers and end-users.

41.     Leica's continued use and distribution of the Software after expiration was knowing and deliberate. Leica was aware of, and was repeatedly notified of, the September 30, 2025 expiration of its subscription rights and of Actian's concerns regarding ongoing use.

42.     The Subscription Order expressly limited Leica's license to the

defined subscription term and conditioned all rights on continued authorization. Although the Subscription Order permitted *existing end-users* to continue using copies of Leica applications already distributed prior to expiration, that limited survival provision applied only to end-users and did not grant *Leica* any right to continue distributing, hosting, updating, enabling, or making available software incorporating the Software after expiration. The Subscription Order did not authorize Leica to maintain public download availability, enable new installations, or otherwise facilitate continued use of the Software beyond the September 30, 2025 expiration date. Any such conduct required a valid, unexpired license, which Leica did not obtain after September 30, 2025. Of course, Leica could have entered into another agreement extending the terms beyond September 30, 2025, but chose not to do so. Fully aware of the expiration of its rights with respect to the Software and its consequences, Leica chose to attempt further concealment of its violations of the Subscription Order and willful infringement by refusing Actian's audit request.

43.     Leica's execution of the Agreements bound it to Actian's licensing framework, which prohibits public availability or unrestricted distribution of copies of the Software without an active license granted by Actian. By continuing to provide the public download access to the Software-embedded products after expiration, Leica acted inconsistently with the Agreements, which prohibit unauthorized distribution and require cessation of use. Public availability of software incorporating the Software necessarily results in unauthorized copying and execution each time such Leica products are downloaded and installed.

44.     As a result, Leica's post-expiration exploitation of the Software was not only unauthorized but also flowed from representations and omissions

COMPLAINT

that vitiated the settlement framework under which Leica obtained limited subscription rights. Leica cannot rely on the Settlement Agreement or any associated releases to shield conduct premised on undisclosed, incompatible use of the Software as a perpetual embedded component. Leica's conduct supports claims for breach of the Agreements, avoidance of releases, copyright infringement, and unfair competition.

45.    Leica's continued distribution of software incorporating FastObjects under perpetual-style terms breached the March 31, 2024 Settlement Agreement and the Subscription Order. Leica agreed to a subscription-only license structure with a fixed expiration date but failed to implement the necessary operational changes for compliance. Leica's post-expiration distribution and enablement of the Software also constitute direct copyright infringement. Each post-expiration download, installation, and execution resulted in unauthorized reproduction, distribution and use of Actian's copyrighted Software, and Leica materially contributed to that infringement by providing publicly available downloads of the Software after its license expired.

46.    Leica's conduct has caused and continues to cause substantial harm to Actian, including lost licensing and subscription revenue, investigative and enforcement costs, and loss of control over its proprietary software. Leica's unauthorized use also distorted competition by allowing Leica to avoid costs and obligations borne by Actian's compliant licensees. Actian has been forced to bring this action to stop the ongoing misuse of its Software and to remedy the resulting harm.

47.    Leica's actions were neither isolated nor inadvertent. They reflect a sustained course of conduct in which Leica continued using Actian's technology while refusing contractual mechanisms designed to ensure lawful

15

COMPLAINT

use, warranting judicial intervention.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

48.    Actian hereby incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully stated herein.

49.    The Agreements constitute valid and enforceable written agreements between Actian and Leica.  For example, the Settlement Agreement included a Subscription Order for the Software that limited Leica's right to use the Software.

50.    Actian fully performed all of its obligations under the Agreements. Actian provided Leica with access to copies of the Software during the subscription term of the Settlement Agreement. Actian honored all limitations and obligations imposed upon it. Actian did not interfere with Leica's authorized use during the term. Actian did not interfere with Leica's authorized post-settlement rights. All conditions precedent to Leica's performance were satisfied or excused.

51.    Leica materially breached the Agreements, including the Settlement Agreement, by exceeding the scope of the limited rights granted therein. From the time it negotiated and executed the Settlement Agreement and Subscription Order and until today, Leica continued to use, deploy, reproduce, distribute, and enable use of the Software beyond the rights, scope and term permitted under the Subscription Order of the Settlement Agreement.

52.    Furthermore, Leica's exploitation of the Software outside of the scope of any license granted by Actian itself constituted a direct material breach of the Agreements because it breached an express term of the end-user license agreement for the Software incorporated within the Agreements, which state, in pertinent part, "The copies of Products provided hereunder are

licensed, not sold, and all intellectual property rights and title to the Products shall remain with Us and Our suppliers and no interest or ownership therein is conveyed to You. No right to create a copyrightable work, whether joint or unitary, is granted or implied." And those acts also violated further restrictions in the end-user license agreements including without limitation, "You shall not attempt to circumvent any user limits or other license, timing or use restrictions that are built in to the Products."  Each such act constituted a separate and independent breach of the Subscription Order, which incorporated the terms of Actian's end-user license agreements that Actian delivers with the Software.

53.    Leica failed to comply with the Settlement Agreement's requirement that all exploitation of the Software cease upon expiration of the agreed rights. Each such act constituted a separate and independent breach of the Settlement Agreement.

54.    Leica further breached the Settlement Agreement by engaging in conduct that undermined the essential purpose of the settlement. The Settlement Agreement was intended to resolve prior disputes and to confine Leica's future use of the Software to a limited, enforceable framework. Leica's conduct rendered the settlement's limitations illusory and deprived Actian of the benefit of its bargain. Such conduct constitutes a material breach of the Agreements.

55.    Leica separately and independently breached the Subscription Order and associated T&Cs by refusing to submit to audits when requested by Actian. Leica's refusal has also likely concealed additional ongoing non-compliance issues. Such conduct constitutes an additional material breach of the Agreements.

56.    Leica further materially breached the Agreements by exceeding

COMPLAINT

the scope of permitted use. Leica continued to use the Software after the subscription expired. Leica continued to distribute software incorporating the Software without authorization. Leica failed to cease use as required. Each act constituted a separate breach.

57. The foregoing are only exemplary breaches of the Agreements of which Actian is presently aware, and additional breaches have likely been concealed from Actian.

58. Actian has suffered significant harm as a result of Leica's breaches of the Agreements, including the loss of the value of the settlement, continued unauthorized exploitation of the Software, lost licensing revenue, and erosion of Actian's contractual and intellectual property rights.

59. Leica's breaches deprived Actian of the benefit of resolving prior disputes on limited terms and effectively conferred upon Leica rights that Actian did not agree to grant.

60. In addition to damages, Actian is entitled to injunctive relief to prevent further breaches of the Agreements and to enforce its limitations.

61. Actian is entitled to recover all damages proximately caused by Leica's breaches of the Agreements, including actual damages, consequential damages, prejudgment interest, and attorneys' fees to the extent permitted by law.

**SECOND CLAIM FOR RELIEF**

**(Direct Copyright Infringement)**

62. Actian hereby incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully stated herein

63. Actian is the owner of the Copyrights, which are valid and subsisting copyrights that cover the Software. In Section 7.1 of the OEM Agreement, Leica has acknowledged and agreed in writing that Actian "owns

18

COMPLAINT

all right, title, and interest in" the Software, and in, all of Actian's "patents, trademarks, trade names, copyrights and trade secrets relating to the design, manufacture, marketing, operation or service of," the Software. Furthermore, in the end-user license agreements that Leica has accepted when it deployed the Software and that are incorporated by reference into the Agreements, Leica also agreed that Actian owns the copyrights in the Software.

64.     Leica is liable for direct copyright infringement by using, reproducing, and distributing substantial portions and entire copies of the Software without authorization and without a valid license permitting such uses, reproductions, and distributions.

65.     Leica is further liable for direct copyright infringement by using, reproducing, and distributing substantial portions and entire copies of the Software in violation of material conditions of the governing agreements and beyond the scope of any license granted thereunder, including by continuing use and distribution after expiration of its licensed rights.

66.     Leica is further liable for direct copyright infringement by distributing, reproducing, selling, licensing, or otherwise making available substantial portions and entire copies of the Software to third parties, including customers and end-users, without permission from Actian.

67.     The foregoing are only exemplary acts of direct copyright infringement, and upon information and belief, there are additional acts of infringement of which Actian remains unaware.

68.     Leica's infringement has been willful and intentional.

69.     As a direct and proximate result of Leica's wrongful conduct, Actian has suffered damages in an amount to be proven at trial, including but not limited to Actian's actual damages and Leica's profits attributable to the infringement.

COMPLAINT

70.     Actian is entitled to recover either (a) actual damages and any profits of Leica attributable to the infringement pursuant to 17 U.S.C. § 504(b), or (b) statutory damages of up to $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), together with attorneys' fees and costs pursuant to 17 U.S.C. § 505.

71.     Actian is further entitled to permanent injunctive relief under 17 U.S.C. § 502 to prevent Leica from continuing its unauthorized use, reproduction, and distribution of the Software.

## THIRD CLAIM FOR RELIEF

### (Contributory Copyright Infringement)

72.     Actian restates and incorporates by reference every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

73.     Leica is liable as a contributory infringer for the ongoing copyright infringement committed by third parties, including Leica's customers, end-users, and other downstream users of Leica's software products that incorporate the Software.

74.     Leica is further liable as a contributory infringer for the ongoing copyright infringement committed by users who install, execute, and rely upon the Software as embedded within Leica's products without authorization from Actian.

75.     Leica knowingly facilitated, encouraged, and induced the unlicensed use, reproduction, and distribution of substantial portions and entire copies of the Software by designing, distributing, and supporting products that embed and automatically execute the Software.

76.     Leica's conduct substantially enabled third parties' unauthorized acts by providing software products that cause the Software to be copied,

installed, and executed as part of normal operation, while Leica knew or should have known that such use exceeded the scope and conditions of any license granted by Actian.

77. Leica had actual and constructive knowledge that third-party infringement of the Software had occurred and would continue to occur as a result of Leica's conduct. Despite that knowledge, Leica caused, enabled, facilitated, and materially contributed to such infringement.

78. Leica's knowledge was actual and constructive because Leica controlled the architecture, distribution, and licensing of its products and knew that continued use, distribution, and execution of the Software occurred without authorization and in violation of governing agreements.

79. Leica's contributory infringement was willful, intentional, continuous, and purposeful, and was undertaken in direct disregard of and with indifference to Actian's rights in and to the Software.

80. Leica's contributory infringement has caused substantial damage to Actian, including lost licensing revenue, loss of control over its copyrighted works, and enforcement costs.

81. Each violation of Actian's exclusive rights in and to each copyrighted work constitutes a separate and distinct act of copyright infringement.

82. As a direct and proximate result of Leica's contributory infringement, Actian is entitled to recover damages in an amount to be proven at trial, including actual damages, infringer's profits, statutory damages, and attorneys' fees and costs as permitted by law.

21
COMPLAINT

## FOURTH CLAIM FOR RELIEF

### (Vicarious Copyright Infringement)

83. Actian restates and incorporates by reference every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

84. Leica is liable as a vicarious infringer for the ongoing copyright infringement committed by third parties, including Leica's customers, end-users, and other downstream users of Leica's software products that incorporate the Software.

85. Upon information and belief, Leica has profited and continues to profit directly from the copyright infringement committed by such third parties through the sale, licensing, support, and maintenance of software products that embed and rely upon the Software.

86. Leica had the right and ability to supervise, control, and prevent the infringing conduct, including by controlling the architecture, compilation, licensing, distribution, and activation of its software products incorporating the Software.

87. Despite having the ability to prevent or curtail infringement, Leica failed to take reasonable steps to do so and instead allowed the infringing use, reproduction, and distribution of the Software to continue.

88. Leica's conduct substantially enabled the unauthorized acts of third parties, notwithstanding Leica's knowledge that such use exceeded the scope and conditions of any license granted by Actian.

89. Leica could have prevented the infringing conduct by restricting distribution, disabling access, modifying its software architecture, or requiring appropriate licensing, but instead continued to permit and benefit from such conduct.

90. Leica derived a direct financial benefit from the infringing activity, including through increased sales, licensing revenue, support fees, and competitive advantages attributable to the inclusion and functionality of the Software.

91. Leica's vicarious infringement was willful, intentional, continuous, and purposeful, undertaken in direct disregard of and with indifference to Actian's rights in and to the Software.

92. Leica's vicarious infringement has caused substantial damage to Actian, including lost licensing revenue, loss of control over its copyrighted works, and enforcement and remediation costs.

93. Each violation of Actian's exclusive rights in and to each copyrighted work constitutes a separate and distinct act of copyright infringement.

94. As a direct and proximate result of Leica's vicarious infringement, Actian is entitled to recover damages in an amount to be proven at trial, including actual damages, infringer's profits, statutory damages, and attorneys' fees and costs as permitted by law.

## FIFTH CLAIM FOR RELIEF

### (Unfair Competition)

95. Actian incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

96. Leica engaged in unlawful business acts and practices within the meaning of California Business and Professions Code § 17200 by engaging in "unlawful" predicate acts for purposes of § 17200.

97. For example, Leica engaged in unlawful business acts and practices by intentionally or recklessly materially breaching binding

agreements governing its use of the Software, including the Agreements. Once it had secured Actian's release and signature on the Settlement Agreement, Leica took no action whatsoever to comply with the limitations in its new license regarding the Software. Leica's continuing publication, deployment, and distribution of copies of the Software even after its license under the Subscription Order ended on September 30, 2025, and Leica's refusal to comply with mandatory contractual obligation to permit Actian to audit its deployment of Software, and its continued exploitation of unlicensed Software copies to this day constitute independent unlawful predicates under § 17200. These violations were part of a continuing course of business conduct through which Leica exploited the Software without authorization and undermined Actian's lawful licensing program.

98.    Leica also engaged in unfair business acts and practices within the meaning of § 17200.  Leica's conduct violates established public policy favoring protection of intellectual property rights and enforcement of arms-length software licensing agreements. By continuing to exploit the Software without authorization and outside the scope of agreed limitations, Leica obtained a competitive advantage through its conduct that is substantially injurious to competition.

99.    In particular, Leica's conduct allows them to avoid licensing fees, compliance obligations, and enforcement mechanisms borne by Actian's compliant licensees and competitors. This conduct distorted competition by enabling Leica to market and distribute software licenses that Actian's other customers pay for, incorporating proprietary technology at zero cost while avoiding contractual and statutory obligations. The resulting harm to Actian and to fair competition substantially outweighs any asserted utility of Leica's conduct. Leica's actions therefore constitute unfair business practices under §

17200.

100. Moreover, Leica intentionally disregarding and breaching the Settlement Agreement and its included Subscription Order violates California's strong public policy favoring parties complying with settlement agreements rather than litigating. Thus, Leica's actions constitute unfair business practices under § 17200.

101. As a direct and proximate result of Leica's unlawful and unfair business acts and practices, Actian suffered injury in fact and lost money and property, including lost licensing revenue, loss of control over its proprietary software, and enforcement and remediation costs.

102. Leica's unlawful and unfair conduct is ongoing and threatens continued harm. Actian seeks restitution, disgorgement of all ill-gotten gains, and injunctive relief prohibiting Leica from continuing its unlawful and unfair business practices.

### SIXTH CLAIM FOR RELIEF

### (Negligence)

103. Actian hereby restates and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

104. As sophisticated computer software developers and licensors themselves, Leica owed Actian an independent duty of reasonable care in connection with establishing and enforcing business practices to comply with the license restrictions in the Subscription Order in its use, deployment, distribution, complying with the subscription term, as well as ceasing to deploy the Software once the license under the Subscription Order expired. Leica possessed superior technical knowledge regarding how the Software was embedded, distributed, and executed within Leica's software products and

exercised exclusive control over those technical and operational decisions. Actian had no technical ability to monitor, restrict, or disable Leica's deployments once the Software was embedded within Leica's products, and entrusted Leica to act reasonably and in good faith in complying with the governing agreements.

105.   Leica's duty of care included an obligation to implement compliance with the terms of the Agreements. As part of that duty, Leica was required to take reasonable steps to ensure that the Software was not distributed, enabled, or used beyond the scope and duration of the subscription license granted. This included an obligation to time-limit the license that it granted to its customers to whom it distributed the Software under the license granted in the Subscription Order, remove or disable public downloads, restrict post-expiration deployments, and delete or cease distributing copies of the Software once Leica's subscription rights expired.

106.   To the extent Leica believed that any aspect of its embedded use, distribution model, or customer enablement raised uncertainty under the Agreements, Leica owed Actian an independent duty of care to seek clarification and guidance before proceeding. Leica was uniquely positioned to understand how its software architecture functioned and whether it was compatible with a time-limited subscription license. Actian reasonably relied on Leica's technical expertise and representations that it could comply with the subscription framework and cease use upon expiration, and the fact that Leica had specifically negotiated the terms of the Settlement Agreement and the Subscription Order directly with Actian.

107.   Leica breached its duty of care by failing to take reasonable steps to prevent continued distribution and use of the Software after the execution of the Settlement Agreement and the expiration of the subscription term. Leica

negligently continued to maintain public download mechanisms, failed to modify its software architecture or licensing controls, and failed to delete or disable copies of the Software embedded within its products. Leica further breached its duty of care by refusing to submit to audits or otherwise provide information that would have allowed Actian to verify compliance and mitigate harm.

108.   Leica's negligent conduct, and specifically its failure to take appreciable action to implement the license restrictions in the Subscription Order, was intended to affect Actian and made it foreseeable that Actian would suffer harm, including erosion of Actian's control over its intellectual property and works, increased enforcement and remediation costs, and emotional distress for Actian's professionals. Leica knew, or should have known, that failure to comply with the Agreements and failure to remove or disable the Software would result in such aggravation at Actian, confusion, and erosion of value in Actian's marketplace.

109.   Actian's injuries were the direct and proximate result of Leica's negligent acts and omissions. Leica's conduct forced Actian to expend substantial time, money, and resources to investigate, enforce its rights, and to detect and attempt to stop the ongoing misuse of the Software. Leica's negligence compounded and exacerbated the injury caused by Leica's contractual breaches and copyright violations alleged herein and independently caused harm to Actian.

110.   Even if Leica mistakenly believed that its continued distribution of non-time-bound copies of its OEM Product incorporating the Software, or that continued reproduction and distribution past the expiration date of the license under the Subscription Order was somehow permitted under the Agreements, Leica nevertheless breached its duty of care by failing to

reasonably review the Agreements, failing to seek clarification or notify Actian of its position opposite the explicit language of the Agreements, refusing to permit Actian its right to audit Leica's deployment of the Software, and failing to act prudently before continuing its course of conduct. Leica's negligence is actionable regardless of intent.

111. Leica's negligent conduct was ongoing, unreasonable, and inconsistent with industry standards for enterprise software licensing compliance. Public policy favors holding sophisticated software vendors accountable when they negligently misuse licensed software and fail to implement reasonable compliance safeguards.

112. As a result of Leica's negligence, Actian has suffered compensatory damages in an amount to be proven at trial. Actian also seeks injunctive relief prohibiting Leica from engaging in further negligent conduct, including continued distribution, enablement, or use of the Software absent valid authorization.

## PRAYER FOR RELIEF

Wherefore, in consideration of the foregoing, Plaintiff prays for judgment against Leica as follows:

1. An order finding that Leica is liable for breach of contract of one or more of the Agreements;

2. An order finding that Leica is liable for direct copyright infringement, indirect copyright infringement, contributory copyright infringement and vicarious copyright infringement of one or more of the Copyrights;

3. An order finding that Leica is liable for unfair business practices in violation of California Business and Professions Code § 17200;

4. For actual damages for copyright infringement under 17 U.S.C. § 504(b);

28

COMPLAINT

5. For damages under 17 U.S.C. § 504(b) in the form of Leica's gross revenues attributable in whole or in substantial part to the continued, unlicensed, and infringing use of the Software as the database foundation of Leica's products, less only those deductible costs directly proven by Leica including, for example, Leica's costs to reproduce, distribute, use and operate the Software, and not including gross revenues that are not directly or indirectly attributable to infringement;

6. For statutory damages under 17 U.S.C. § 504(c), in an amount up to $150,000 per infringed work;

7. Attorneys' fees and costs as set forth, for example, in the Agreements, 17 U.S.C. § 505, and under other relevant law;

8. For a preliminary injunction followed by a permanent injunction against Leica, and its agents, customers, users, affiliates, partners, vendors, employees, and any others acting in concert with any of them from continued breaches of the Agreements, continued distribution or offers to distribute copies of the Software, continued acts of copyright infringement, or continued unfair competition acts;

9. For an order requiring Leica and its agents, users, affiliates, partners, customers and all others who may be using Actian's Software in an unauthorized manner to return to Actian the Software and all materials associated therewith, and cease and desist from all use of the Software;

10. For damages commensurate with Leica's unjust enrichment;

11. For damages and injunctive relief prohibiting Leica from continuing its unlawful and unfair business practices;

12. For damages and injunctive relief for Leica's negligence;

13. Interest under the maximum amount allowable in damages for all asserted claims; and

COMPLAINT

14.    For all such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Actian Corporation requests a trial by jury of any issues so triable by right.

Dated: January 30, 2026

/s/ Ryan Hatch
Ryan E. Hatch
ryan@hatchlaw.com
California Bar No. 235577
**HATCH LAW, PC**
13323 Washington Blvd., Ste. 302
Los Angeles, CA 90066
Tel: (310) 279-5076
Fax: (310) 693-5328

*/s/ Alan Sege*
Alan D. Sege
alan@alansege.com
California Bar No. 177350
**ALAN SEGE, ESQ. PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 957-3301
Fax: (310) 693-5328

*/s/ Edmund DeFrank*
Edmund DeFrank
ed@alansege.com
California Bar No. 168479
**ALAN SEGE, ESQ. PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 957-3301
Fax: (310) 693-5328

COMPLAINT

*Attorneys for Plaintiff Actian Corporation*

COMPLAINT