**LTL ATTORNEYS LLP**
David W. Ammons (SBN 187168)
Kevin B. Kelly (SBN 274145)
300 South Grand Ave., Suite 3950
Los Angeles, CA 90071
Tel: (213) 612-8900
Fax: (213) 612-3773
david.ammons@ltlattorneys.com
kevin.kelly@ltlattorneys.com

**Attorneys for Defendant**
LEICA GEOSYSTEMS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

| | |
|---|---|
| ACTIAN CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>LEICA GEOSYSTEMS, INC.<br><br>Defendants. | CASE NO: 4:26-cv-00977-YGR<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD, FOURTH, AND FIFTH CLAIMS FOR RELIEF IN PLAINTIFF'S AMENDED COMPLAINT**<br><br>**DATE:  May 12, 2026**<br>**TIME:   2:00 p.m.**<br>**PLACE: Courtroom 1, 4th Floor**<br><br>Action Filed: 01/30/2026<br>Trial Date: Not Set |

- 1 -                    CASE NO. 4:26-cv-00977-YGR

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** that on May 12, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 1 of the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612, Defendant Leica Geosystems Inc. ("Leica"), will and hereby does move the Court to dismiss Plaintiff Actian Corporation's ("Plaintiff") third, fourth, and fifth claims for relief in its First Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") on the grounds that these purported claims fail to state a claim upon which relief can be granted.

This Motion is based on the following grounds:

1. Plaintiff's third claim for "Contributory Copyright Infringement" fails to state facts sufficient to constitute a claim for relief pursuant to FRCP 12(b)(6).

2. Plaintiff's fourth claim for "Vicarious Copyright Infringement" fails to state facts sufficient to constitute a claim for relief pursuant to FRCP 12(b)(6).

3. Plaintiff's fifth claim for "Negligence" fails to state facts sufficient to constitute a claim for relief pursuant to FRCP 12(b)(6).

The Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof, and the pleadings and papers on file.

Dated:  April 2, 2026          **LTL ATTORNEYS LLP**

By:

*/s/ David Ammons*

David W. Ammons
Kevin B. Kelly
Attorneys for Defendant
**LEICA GEOSYSTEMS, INC.**

- 2 -        CASE NO. 4:26-cv-00977-YGR

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................... 6

II. PROCEDURAL HISTORY ................................................................................. 7

III. ARGUMENT ...................................................................................................... 9

    A. PLAINTIFF'S THIRD CLAIM FAILS TO STATE A CLAIM FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT ............... 9

        1. Plaintiff Fails to Identify Any Specific Third-Party Direct Infringer. ............................................................................ 9

        2. The Allegation That the Cyclone Products Lack Substantial Non-Infringing Uses Is a Bare Legal Conclusion That Must Be Disregarded. ........................................ 12

        3. The Inducement Theory Is Unsupported by the Pleaded Facts. .................................................................................. 13

        4. Material Contribution Allegations Are Deficient as to Post-Notice Conduct. ......................................................... 14

    B. PLAINTIFFS FOURTH CLAIM FAILS TO STATE A CLAIM FOR VICARIOUS COPYRIGHT INFRINGEMENT ...................... 14

        1. The FAC Does Not Plausibly Allege That Leica Has Practical Supervisory Ability Over Already-Deployed Embedded Software Under the System's Current Architecture. ............................................................... 15

        2. Plaintiff Has Not Alleged a Direct Financial Benefit. .............. 17

        3. The Claim Is Structurally Duplicative of the Direct Infringement Claim. ......................................................... 18

    C. PLAINTIFF'S NEGLIGENCE CLAIM IS STILL BARRED BY THE ECONOMIC LOSS RULE ..................................................... 19

        1. California's Economic Loss Rule Bars Recovery for Purely Economic Losses Between Contracting Parties. ...................... 19

        2. No Independent Tort Duty Exists Beyond Leica's Contractual Obligations. ..................................................... 20

        3. The Negligence Claim Is Preempted by the Copyright Act. ..... 22

        4. A Corporation Cannot Recover Emotional Distress Damages. ...................................................................... 23

IV. CONCLUSION ................................................................................................. 23

CASE NO. 4:26-cv-00977-YGR

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ................................................................................. 10, 18

*Aas v. Superior Court*,
24 Cal.4th 627 (2000) ................................................................................. 19, 20, 21

*Actian Corporation v. Aah Pharmaceuticals Limited*,
Case No. 3:25-cv-6519 (N.D. Cal. 2025) ............................................................. 9, 19

*Actian Corporation v. Ab Sciex LLC, et. al.*,
Case No. 4:23-cv-5113 (N.D. Cal. 2023) ..................................................................... 9

*Actian Corporation v. Advanced Business Software & Solutions Ltd.*,
Case No. 4:25-cv-1903 (N.D. Cal. 2025) ..................................................................... 9

*Actian Corporation v. Ashley Furniture Industries LLC*,
Case No. 3:25-cv-3141 (N.D. Cal. 2025) ..................................................................... 9

*Actian Corporation v. AutoClerk, Inc., et al.*,
Case No. 5:25-cv-09136 (N.D. Cal. 2025) ................................................................... 9

*Actian Corporation v. BHS Corrugated North America, Inc.*,
Case No. 1:25-cv-246 (D. Del. 2025) .......................................................................... 9

*Actian Corporation v. Diasorin Molecular LLC*,
Case No. 8:24-cv-2758 (C.D. Cal. 2024) ..................................................................... 9

*Actian Corporation v. Enocean Gmbh, et. al.*,
Case No. 4:24-cv-1470 (N.D. Cal. 2024) ..................................................................... 9

*Actian Corporation v. General Motors Holdings LLC, et al.*,
Case No. 5:24-cv-3743 (N.D. Cal. 2024) ..................................................................... 9

*Actian Corporation v. I.C. Systems Inc.*,
Case No. 4:23-cv-3164 (N.D. Cal. 2023) ..................................................................... 9

*Actian Corporation v. Mirion Technologies, Inc.*,
Case No. 3:23-cv-5815 (N.D. Cal. 2023) ..................................................................... 9

*Actian Corporation v. Sabre GLBL, Inc., et. al.*,
Case No. 4:24-cv-34 (N.D. Tex. 2024) ........................................................................ 9

*Actian Corporation v. SS&C Technologies, Inc.*,
Case No. 4:24-cv-5064 (N.D. Cal. 2024) ..................................................................... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ passim

*Asset Vision  LLC v. Fielding*,
2013 WL 6633743 (D. Idaho Dec. 17, 2013) ............................................................ 11

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...............................................................................passim

*Best Carpet Values, Inc. v. Google, LLC,*
  90 F.4th 962 (9th Cir. 2024)...................................................................22

*Catello v. I.T.T. General Controls,*
  152 Cal.App.3d 1005 (1984).....................................................................23

*Erickson Products, Inc. v. Kast,*
  921 F.3d 822 (9th Cir. 2019) ...............................................................17, 18

*J'Aire Corp. v. Gregory,*
  24 Cal.3d 799 (1979) ...............................................................................20

*Laws v. Sony Music Entertainment, Inc.,*
  448 F.3d 1134 (9th Cir. 2006).................................................................22

*Luvdarts, LLC v. AT&T Mobility, LLC,*
  710 F.3d 1068 (9th Cir. 2013)........................................................10, 11, 15, 16

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
  545 U.S. 913 (2005) ................................................................................13

*Perfect 10, Inc. v. Giganews, Inc.,*
  847 F.3d 657 (9th Cir. 2017) ...................................................................15

*Rattagan v. Uber Technologies, Inc.,*
  17 Cal.5th 1 (2024)..............................................................................19, 20

*Sony Corp. of America v. Universal City Studios, Inc.,*
  464 U.S. 417 (1984) ................................................................................12

**Statutes**
17 U.S.C. § 106..........................................................................................22

**Rules**
Fed. R. Civ. P. 12(b)(6) ...............................................................................6

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This is a software licensing dispute between two sophisticated commercial entities whose entire relationship was comprehensively defined by a written Settlement Agreement and Subscription Order. In an effort to convert a straightforward licensing dispute into something far larger, Plaintiff Actian Corporation ("Plaintiff") ignores the express language of the parties' agreements in contending that Defendant Leica Geosystems, Inc. ("Leica") had no right to distribute licenses to its licensees that did not "turn off" after September 30, 2025. This contention squarely contradicts the parties' contracts which unequivocally granted Leica and its licensees the continued right to use Plaintiff's FastObjects Software (the "Software") after that deadline.

For purposes of this motion, however, Plaintiff has appended three claims — contributory copyright infringement, vicarious copyright infringement, and negligence — that are legally deficient on their face and cannot survive scrutiny under Federal Rule of Civil Procedure 12(b)(6).

The contributory and vicarious copyright claims share a foundational defect: despite Plaintiff's acknowledged access to, and investigation of, Leica's public download portals, its myWorld customer portal, and its commercial storefront, Plaintiff cannot identify a single specific third-party customer who downloaded after the September 30, 2025 expiration of Leica's subscription. This is a critical omission because secondary liability requires, inter alia, a predicate direct infringer. The First Amended Complaint's ("FAC") generic references to unidentified "customers, end-users, and other downstream users" do not satisfy the pleading standards articulated in *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*. The Ninth Circuit has affirmed dismissal on this precise basis.

The vicarious infringement claim independently fails because the FAC's own

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

description of Leica's embedded-software architecture — in which Software automatically installs and executes as a background database component that end-users cannot see or control — contradicts Plaintiff's conclusory assertion that Leica has the practical ability to supervise downstream use under the system's current architecture. The claim is also fatally deficient because Plaintiff's financial benefit theory — premised on support contract revenues and software interoperability arrangements — does not constitute a "direct" financial benefit flowing from the infringement itself under Ninth Circuit authority.

Plaintiff's negligence claim is foreclosed by California's economic loss rule. The parties are in contractual privity, Plaintiff seeks only economic losses, and every "duty" Plaintiff ascribes to Leica is a restatement of Leica's express contractual obligations under the Settlement Agreement and Subscription Order. The California Supreme Court has held that the economic loss rule bars negligence claims for purely economic losses between contracting parties. Moreover, the claim is independently preempted by the Copyright Act to the extent it rests on unauthorized reproduction and distribution of copyrighted software.

For these reasons, claims three, four, and five should be dismissed with prejudice.

## II.    PROCEDURAL HISTORY

Plaintiff is a corporation that develops and licenses the Software for customers, including Leica.  (FAC, ¶ 1).  Under a series of license agreements in place since 1998, Leica has used and distributed the Software, as an embedded component in its own software products.  (*Id.*, ¶ 2).

In or about 2023, a dispute arose between the parties over interpretation of the parties' license agreement related to accounting and reporting of royalty payments and the scope of Leica's software grant.  (*Id.*, Ex. 1)  That dispute resulted in a March 2024 Settlement Agreement, which included a Subscription Order by which Leica

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

purchased the right to continue to use and distribute the Software within its OEM applications from March 31, 2024, to September 30, 2025.[1]  (*Id*., ¶ 4)

Plaintiff alleges that the Settlement Agreement, the Subscription Order and/or terms and conditions referenced in the Subscription Order limited Leica to use and distribution of "time-bound" Software licenses to its customers for use within its OEM Applications.  (*Id*.)   In fact, the Subscription Order expressly carved out each end user's right to use the Software from Leica's right to continue to distribute the Software.

> Subject to payment of the Subscription License Fee, the licenses extend through the Subscription License Term, but each End User's right to use the copies of OEM Applications already distributed by Leica or its Leica Affiliates under this Order will survive and will be unaffected by any termination or expiration  of Actian's license grant hereunder.

(*Id*., Ex. B) Plaintiff selectively cites portions of this provision in alleging  that Leica, and by extension Leica's customers, were required to "cease all use of the Software upon the expiration date of the subscription term."  (*Id*., ¶ 20)

Plaintiff asserts that the parties agreed to Plaintiff's right to audit Leica's compliance with the parties' agreements, that Plaintiff has demanded such audit right, and that Leica has refused this request.  (*Id*., ¶¶ 33-36) The Settlement Agreement, however, references no audit right, and by its terms expressly negated the prior contractual right to do so.

Plaintiff commenced this action on January 30, 2026.  In its original Complaint, Plaintiff alleged all of the present claims, *i.e*., 1) breach of contract; 2) copyright infringement;  3) contributory  copyright  infringement;  4) vicarious  copyright infringement; 5) negligence, plus a claim for violation of California's Unfair

---

[1] As part of the Settlement Agreement, Leica agreed to pay Plaintiff $2.1 million by January 30, 2025.  (*Id*., Ex. 1) Compliance with that term is not at-issue in this litigation.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

Competition Law ("UCL").[2]   Leica filed a Motion to Dismiss as to Plaintiff's contributory and vicarious copyright infringement, negligence and UCL claims. Plaintiff responded with the FAC.

## III.   ARGUMENT

A motion to dismiss under Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6) may be brought when a plaintiff fails to state a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Bell*, *supra*, 550 U.S. at p. 555 (citation omitted).

### A.   PLAINTIFF'S THIRD CLAIM FAILS TO STATE A CLAIM FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT

#### 1.   Plaintiff Fails to Identify Any Specific Third-Party Direct Infringer.

As it did in its original Complaint, Plaintiff's third claim for relief attempts to allege a claim for contributory copyright infringement.  It again fails to meet its

---

[2] Plaintiff is no stranger to the courtroom, having filed no less than 14 lawsuits (including this one) in the last three years against parties asserting similar claims. *See Actian Corporation v. AutoClerk, Inc., et al.*, Case No. 5:25-cv-09136 (N.D. Cal. 2025);  *Actian Corporation v. Aah Pharmaceuticals Limited*, Case No. 3:25-cv-6519 (N.D. Cal. 2025); *Actian Corporation v. Ashley Furniture Industries LLC*, Case No. 3:25-cv-3141 (N.D. Cal. 2025); *Actian Corporation v. BHS Corrugated North America, Inc.*, Case No. 1:25-cv-246 (D. Del. 2025); *Actian Corporation v. Advanced Business Software & Solutions Ltd.*, Case No. 4:25-cv-1903 (N.D. Cal. 2025); *Actian Corporation v. Diasorin Molecular LLC*, Case No. 8:24-cv-2758 (C.D. Cal. 2024); *Actian Corporation v. SS&C Technologies, Inc.*, Case No. 4:24-cv-5064 (N.D. Cal. 2024); *Actian Corporation v. General Motors Holdings LLC, et al.*, Case No. 5:24-cv-3743 (N.D. Cal. 2024); *Actian Corporation v. Enocean Gmbh, et. al.*, Case No. 4:24-cv-1470 (N.D. Cal. 2024); *Actian Corporation v. Sabre GLBL, Inc., et. al.*, Case No. 4:24-cv-34 (N.D. Tex. 2024); *Actian Corporation v. Mirion Technologies, Inc.*, Case No. 3:23-cv-5815 (N.D. Cal. 2023); *Actian Corporation v. Ab Sciex LLC, et. al.*, Case No. 4:23-cv-5113 (N.D. Cal. 2023); *Actian Corporation v. I.C. Systems Inc.*, Case No. 4:23-cv-3164 (N.D. Cal. 2023).

- 9 -                    CASE NO. 4:26-cv-00977-YGR

pleading burden in this regard because Plaintiff fails to identify Leica's knowledge of a third party's direct infringement.

Liability for contributory infringement attaches if a defendant: 1) knew of the direct infringement; and 2) either induced, caused or materially contributed to the infringing conduct. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). The first element "requires more than a generalized knowledge by the [defendant] of the possibility of infringement." *Id.* The plaintiff must allege "actual knowledge of *specific acts of infringement*." *Id.* (citation omitted)(emphasis added); *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001).

The FAC refers only to an unidentified class of "customers, end-users, and other downstream users" of Leica's software products. FAC ¶ 93. Not a single specific customer, download event, installation, or execution is identified anywhere in the 41-page complaint. The FAC does not allege that any particular person downloaded Cyclone software after September 30, 2025, and thereby infringed. It does not reference a single transaction record, activation log, or other concrete fact establishing that any third party engaged in direct infringement.

The Ninth Circuit's decision in *Luvdarts* controls. There, the plaintiffs alleged that wireless carriers "knowingly permitted, encouraged, and facilitated" copyright infringement by their subscribers. *Luvdarts*, *supra*, 710 F.3d at 1069. The Ninth Circuit affirmed dismissal under Rule 12(b)(6), holding that the plaintiff had "failed to allege specific knowledge of infringement" — specifically, that defendants had "actual knowledge of specific acts of infringement." *Id.* at 1072. The court was unmoved by the argument that such specificity was difficult to achieve before discovery, emphasizing that *Twombly/Iqbal* require plausible factual allegations regardless of the defendant's informational advantage. *Id.*

This case is on all fours with *Luvdarts*. Plaintiff confirms that it personally downloaded and installed Cyclone Core 2023.1 and verified the presence of the

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

Software. FAC ¶¶ 39–41. Yet, it fails to allege even one instance in which a Leica customer — as distinct from Plaintiff itself — downloaded Cyclone software after the license expired and thereby infringed. The conclusory allegation that infringement was committed by unspecified "customers" is precisely the kind of naked legal conclusion that remains insufficient under *Twombly*.

Moreover, the FAC acknowledges that Leica removed the outdated versions of Cyclone Core from its public  Incident Mapping Suite Release History website after receiving notice from Plaintiff on March 16, 2026. FAC ¶ 42. For the period following that takedown, Plaintiff makes no attempt to allege specific ongoing third-party infringement through the remaining portals. The mere continued listing of products, which may no longer or have never contained the Software, in a password-protected customer portal, untethered to any allegation that a specific customer actually downloaded an infringing copy of the Software, does not state a plausible claim for relief.

Plaintiff's attempt to bootstrap knowledge from Leica's control of its own product architecture (FAC, ¶ 105) is unavailing. That Leica "controlled the architecture, distribution, and licensing of its products" does not establish knowledge of third-party infringement—it establishes, at most, that Leica was aware that its products contained embedded software, which Leica was authorized to distribute during the license term. General knowledge that software is embedded in a product is categorically different from specific knowledge that identified third parties are committing acts of copyright infringement. *See Luvdarts*, 710 F.3d at 1072–73, stating that "contributory liability [does] not automatically follow where [a] 'system allows for the exchange of copyrighted material.'"). *See also, Asset Vision  LLC v. Fielding*, 2013 WL 6633743, at *4 (D. Idaho Dec. 17, 2013) (plaintiff's failure to identify any specific third party who directly infringed the claimed copyright is fatal to its contributory infringement claim).  For this reason alone, Plaintiff's contributory

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

infringement fails to state a claim for relief.

### 2. The Allegation That the Cyclone Products Lack Substantial Non-Infringing Uses Is a Bare Legal Conclusion That Must Be Disregarded.

To establish contributory infringement through a "knowing provision of services" theory, a plaintiff must allege either that the product or service at issue lacks substantial non-infringing uses or provide specific facts supporting actual knowledge of identified infringing activity. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984). Plaintiff's FAC attempts the former, alleging in conclusory terms that "the Cyclone products that contain the Software are not capable of substantial non-infringing uses." FAC ¶¶ 97, 100.

This allegation is a legal conclusion masquerading as a factual one and must be disregarded under *Iqbal*. The Cyclone product line is a sophisticated commercial suite of 3D laser scanning, point-cloud processing, and geospatial software that supports complex industrial workflows including surveying, mapping, building information modeling, and construction documentation. These capabilities are central to Leica's commercial value proposition and are entirely independent of which database engine is embedded in the software. The FAC itself acknowledges that the Software serves as a "foundational backend component" providing invisible data persistence and transactional functions. FAC ¶ 16. Plaintiff's bare assertion that products with

- 12 -    CASE NO. 4:26-cv-00977-YGR

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

substantial, independently valuable commercial uses "are not capable of substantial non-infringing uses" is entitled to no presumption of truth.

### 3.      The Inducement Theory Is Unsupported by the Pleaded Facts.

The FAC also invokes the inducement theory recognized in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005), alleging that Leica "distributed the Cyclone software with the object of promoting its use to infringe Plaintiff's copyrights." FAC ¶ 100. However, *Grokster* requires "an affirmative act . . . taken to foster infringement" — something beyond simply distributing a product with knowledge that some uses may be infringing. 545 U.S. at 936.

The factual predicate Plaintiff offers consists entirely of Leica's ordinary marketing descriptions of its own software's capabilities — describing Cyclone Core as capable of "handling massive datasets and complex registrations." FAC ¶ 100. This is commercial speech about Leica's own proprietary product functionality. There is no allegation that Leica marketed to customers seeking to access the Software without a license, advertised the availability of post-expiration access, or communicated to customers in any way that they would be receiving ongoing use of Plaintiff's Software beyond the terms of Leica's expired license. Marketing a database-dependent software product for its data-handling capabilities does not constitute promotion of copyright infringement as a matter of law.

**4.      Material Contribution Allegations Are Deficient as to Post-Notice Conduct.**

Even accepting Plaintiff's generic allegations as to the period before March 16, 2026, the material contribution theory fails for post-notice conduct. The FAC acknowledges that Leica removed Cyclone Core from the public website upon receiving notice. FAC ¶ 42. For the period after the takedown, the remaining theory of material contribution rests on the continued availability of a separate and independent product, called Cyclone REGISTER 360 PLUS, through the myWorld portal and commercial storefront. FAC ¶¶ 43–46.

The FAC alleges no facts connecting these remaining product listings to any specific post-notice third-party infringement. It does not allege that any customer downloaded Cyclone REGISTER 360 PLUS after March 16, 2026, and thereby infringed. Absent any allegation that third-party infringement is actually continuing through the remaining portals, the theory is speculative and implausible on its face under *Twombly*.

Accordingly, Plaintiff's third claim for relief should be dismissed.

**B.      PLAINTIFFS FOURTH CLAIM FAILS TO STATE A CLAIM FOR VICARIOUS COPYRIGHT INFRINGEMENT**

To state a claim for vicarious copyright infringement, Plaintiff must allege that the defendant had both the "right and ability to supervise the infringing activity" and

- 14 -                    CASE NO. 4:26-cv-00977-YGR

"a direct financial interest" in the activity. *Luvdarts*, *supra*, 710 F.3d at 1071. Both elements must be adequately pleaded. *Id.*, at 1072–74. The FAC does neither.

### 1. The FAC Does Not Plausibly Allege That Leica Has Practical Supervisory Ability Over Already-Deployed Embedded Software Under the System's Current Architecture.

The Ninth Circuit's decisions in *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) and *Luvdarts* establish that the supervision element requires more than a theoretical or contractual ability to moderate — it requires the practical ability to stop or limit the specific infringing conduct under the "current architecture" of the defendant's actual systems. *Luvdarts*, 710 F.3d at 1071–72. In *Luvdarts*, the Ninth Circuit affirmed dismissal where the carriers lacked the architectural capability to supervise the specific infringing conduct, even if they could theoretically have redesigned their systems to add that capability. *Id.*

The FAC's supervision theory suffers a fatal internal contradiction. On one hand, the FAC repeatedly and specifically alleges that the Software is so deeply embedded in Leica's software architecture that it "automatically installs and executes" as part of normal operation, that customers have "no meaningful ability to avoid copying or execution of the Software," and that "end-users had no practical ability to distinguish between pre-expiration and post-expiration distributions." FAC ¶¶ 56, 63. This describes an architecture expressly designed so that the Software operates invisibly and automatically — with no user-level or administrator-level point of

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

control.

On the other hand, the FAC speculates — expressly "on information and belief" — that Leica's "entitlement-based licensing system involving Entitlement IDs (EID) and Client License Manager (CLM)" constitutes "the technical mechanisms by which Leica can suspend use of its software." FAC ¶ 120. The FAC provides no technical description of how the EID/CLM system would reach an already-embedded executable (FptObjectsServer64.exe) on a customer's local machine, whether a remote deactivation function exists or was implemented, or whether it would affect installed copies as opposed to future activations only.

"On information and belief" allegations must be supported by sufficient factual content to render the inference plausible. *Iqbal*, 556 U.S. at 678. The conclusory assertion that a license management system capable of suspending future software activations could also reach and deactivate already-deployed embedded executables in thousands of customer installations is not sufficient. Under *Luvdarts*, what matters is capability under the current architecture — not what Leica could have built. Because Plaintiff's own allegations describe an architecture in which the Software executes automatically and invisibly, it cannot simultaneously allege that the current architecture permits Leica to meaningfully supervise and halt that execution across its entire installed base.

This ground alone justifies dismissal of this claim with prejudice.

- 16 -   CASE NO. 4:26-cv-00977-YGR

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

## 2.   Plaintiff Has Not Alleged a Direct Financial Benefit.

The Ninth Circuit's decision in *Erickson Products, Inc. v. Kast*, 921 F.3d 822 (9th Cir. 2019), is directly controlling and independently defeats this claim. In *Erickson*, the court vacated a vicarious infringement verdict and held that a defendant's avoidance of licensing fees does not constitute a "direct financial benefit" sufficient to establish vicarious liability. *Id.* at 829–30. The court emphasized that the benefit must flow from the infringing activity itself — typically by acting as a draw that attracts customers or revenue — not merely from general use of the defendant's products and services. *Id.*

The FAC offers two theories of direct financial benefit. Neither survives *Erickson*.   First, the FAC alleges that Leica derives benefit from Customer Care Package ("CCP") fees charged to customers who continue using Cyclone Core and pay for a CCP. FAC ¶¶ 125–127. There is no allegation, however, that customers would decline CCPs if the Software were removed, or that the Software is in any way a draw that attracts CCP purchases. This fails *Erickson*'s directness requirement.

Second, the FAC alleges benefit because Plaintiff has speculated that Cyclone REGISTER 360 PLUS licensees may use their separate and independent license to run Cyclone Core. FAC ¶ 126. Even at face value, if this claim were true, it  would describe a benefit from Leica's own software interoperability design — not a benefit flowing from Plaintiff's copyrighted database engine. The FAC does not allege that

the Software is the specific feature enabling that interoperability, that customers purchase a license to Cyclone REGISTER 360 PLUS so that they can access Cyclone Core to use the Software, or that the independent product, Cyclone REGISTER 360 PLUS, contains the Software. The causal chain is too attenuated and indirect to constitute a "direct" financial benefit under *Erickson*.

### 3.    The Claim Is Structurally Duplicative of the Direct Infringement Claim.

This claims also fails because it is duplicative.  Secondary liability requires two distinct parties: a direct infringer and a secondary infringer whose liability arises from facilitating the primary infringer's conduct. *Napster*, 239 F.3d at 1013 n.2. In this action, Leica is simultaneously pleaded as the direct infringer under Claim Two, and the vicarious infringer under Claim Four. The vicarious claim can survive only if it targets third-party customers' downloading and installation as the predicate direct infringement, with Leica's inaction as the basis for secondary liability.

As discussed above, the FAC identifies no specific third-party direct infringer. To the extent Claim Four depends on Leica's own acts — its own reproduction and distribution of the Software — as the "direct infringement" for which it is vicariously liable, the claim is logically incoherent. A party cannot be vicariously liable for its own primary infringement; Claim Two already captures Leica's own conduct. If Claim Four does not identify a distinct third party whose primary infringement Leica supervised and from which it derived direct financial benefit, it adds nothing and must

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

be dismissed on this ground as well.

### C.    **PLAINTIFF'S NEGLIGENCE CLAIM IS STILL BARRED BY THE ECONOMIC LOSS RULE**

Plaintiff's negligence claim is independently barred by four separate and sufficient grounds: California's economic loss rule, the absence of an independent tort duty, preemption by the Copyright Act, and the legal incapacity of a corporation to suffer emotional distress.

#### 1.    **California's Economic Loss Rule Bars Recovery for Purely Economic Losses Between Contracting Parties.**

California's economic loss rule prevents a party to a contract from recovering in tort for purely economic losses arising from the other party's failure to perform contractual obligations. *Aas v. Superior Court* (2000) 24 Cal.4th 627, 643. The rule preserves the boundary between contract and tort law, ensures that parties can rely on negotiated risk allocations, and prevents every breach of contract from generating additional tort exposure. *Id.*

California's Supreme Court recently reaffirmed and elaborated upon the rule's scope in *Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1. In *Rattagan*, the Court held that the economic loss rule "only applies to bar tort recovery for negligently inflicted economic losses unaccompanied by physical or property damage." *Id.* at *12. The Court confirmed that any exception allowing a tort claim to

- 19 -                    CASE NO. 4:26-cv-00977-YGR

proceed alongside a contract claim applies only to fraudulent concealment, not to ordinary negligence, and only where the tort claim can be established independently of the parties' contractual rights and obligations and exposes the plaintiff to harm beyond the parties' reasonable contemplation at the time of contracting. *Id.*

Every element of harm Plaintiff identifies in its negligence claim is purely economic: "lost licensing and subscription revenue, investigative and enforcement costs, and loss of control over its proprietary software." FAC ¶ 66; *see also* FAC ¶ 137 ("erosion of Plaintiff's control over its intellectual property and works, increased enforcement and remediation costs"). There is no allegation of physical injury or property damage. These losses flow entirely from Leica's alleged failure to cease use and distribution of software after a contractual subscription term expired. Under *Rattagan* and *Aas*, these are contract damages, not cognizable tort damages.

The parties are in direct contractual privity through the Settlement Agreement and Subscription Order. The California Supreme Court held in *Aas* that the economic loss rule applies with particular force where contracting parties are in privity, foreclosing the "special relationship" exception recognized for third parties in *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799. There is no basis to carve out an exception here.

### 2.    No Independent Tort Duty Exists Beyond Leica's Contractual Obligations.

To avoid the economic loss rule, Plaintiff alleges that Leica owed an

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

"independent duty of reasonable care" arising from its "superior technical knowledge" about the Software's integration into Leica's products. FAC ¶ 133. This framing does not survive scrutiny.

The duties Plaintiff actually describes in its negligence claim are indistinguishable from Leica's contractual obligations: Plaintiff says Leica had a duty to "implement compliance with the terms of the Agreements," to "time-limit the license that it granted to its customers," to "remove or disable public downloads," to "restrict post-expiration deployments," and to cease distributing copies of the Software upon expiration. FAC ¶¶ 133–134. These are the precise obligations imposed by the Settlement Agreement and Subscription Order. A duty that mirrors contractual obligations is not "independent" for purposes of the economic loss rule. *See Aas*, 24 Cal.4th at 643.

Plaintiff's invocation of Leica's "superior technical knowledge" as a source of independent duty is also unavailing. No California court has recognized a freestanding tort duty of care on the part of a commercial software licensee to ensure compliance with the terms of a software subscription agreement beyond the contractual duty the agreement itself imposes. Recognizing such a duty would transform every commercial software license in California into an independent source of tort liability — duplicating contractual remedies without limiting principle and contravening the policy rationale for the economic loss rule.

CASE NO. 4:26-cv-00977-YGR
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

### 3.    The Negligence Claim Is Preempted by the Copyright Act.

Section 301 of the Copyright Act expressly preempts any state-law claim that: (1) concerns a work within the subject matter of copyright; and (2) asserts rights equivalent to any of the exclusive rights within the general scope of copyright under 17 U.S.C. § 106. *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137–38 (9th Cir. 2006). A state claim is preempted unless it requires a qualitatively different "extra element" beyond mere reproduction, distribution, or other conduct within § 106. *Id.* at 1143.

Plaintiff has plead the Software is within the subject matter of copyright. The gravamen of Plaintiff's negligence claim is that Leica negligently reproduced and distributed Plaintiff's copyrighted Software without authorization after the subscription expired. FAC ¶¶ 136–139. This is substantively identical to Plaintiff's copyright infringement claim. Adding a "should have known" negligence gloss to conduct that § 106 already addresses does not supply a qualitatively different extra element sufficient to escape preemption. *See Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 971 (9th Cir. 2024) (state claims preempted where they seek to enforce rights equivalent to those protected by the Copyright Act).

To the extent the negligence claim is premised on Leica's alleged breach of the audit provision, that theory is independently foreclosed by the economic loss rule, as the audit obligation is a contractual term whose breach sounds exclusively in contract.

**4.     A Corporation Cannot Recover Emotional Distress Damages.**

The FAC seeks to recover for "emotional distress for Actian's professionals" as a category of harm caused by Leica's alleged negligence. FAC ¶ 137. As a matter of settled California law, a corporation lacks the legal capacity to suffer emotional distress. *See*, *e.g.*, *Catello v. I.T.T. General Controls*, 152 Cal.App.3d 1005, 1011 (1984). Individual employees of Plaintiff are not parties to this action, their personal reactions to a business dispute are not a cognizable category of corporate damages, and the FAC provides no basis for individual employee standing. This deficiency is not curable by amendment and independently warrants dismissal of the negligence claim.

## IV.     CONCLUSION

For the reasons stated above, Leica respectfully requests that the Court dismiss with prejudice Plaintiff's third, fourth, and fifth claims for relief without leave to amend as they fail to state a claim for relief.

Dated:  April 2, 2026                    **LTL ATTORNEYS LLP**


                                         By:

                                         */s/ David Ammons*
                                         _____
                                         David W. Ammons
                                         Kevin B. Kelly
                                         Attorneys for Defendant
                                         **LEICA GEOSYSTEMS, INC.**

- 23 -          CASE NO. 4:26-cv-00977-YGR

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 2, 2026, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered CM/ECF users.

Dated:  April 2, 2026

**LTL ATTORNEYS LLP**

By:*/s/ David Ammons*

David W. Ammons

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS